IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALEXIS LICCIARDELLO,

                Plaintiff,

v.

TRANS UNION, LLC,

                Defendant.

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Alexis Licciardello, by counsel, states the following Complaint against Defendant Trans Union, LLC ("Trans Union"):

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages, costs, and attorneys' fees under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

2. Trans Union has a long history of consumer complaints and lawsuits alleging (and establishing) that it unreasonably mixed the credit file and information of one consumer with the credit file of another consumer. This mixed file problem is caused by Trans Union's overly broad matching criteria used to sort data into a consumer's credit file.

3. In this case—representative of many others—Trans Union combined or mixed Plaintiff's credit file with another individual, even though their Social Security numbers, names and dates of birth are different.

4. In this case, Trans Union mixed Plaintiff's credit report and began reporting Plaintiff as deceased even though she was very much alive and well. After Plaintiff disputed the inaccurate information with Trans Union, Trans Union failed to correct her report. Because of

Trans Union's conduct, Plaintiff suffered significant damages, including a mortgage denial and emotional distress.

5. As a result, Plaintiff alleges claims against Trans Union under the FCRA, 15 U.S.C. § 1681e(b), for failing to reasonably assure the maximum possible accuracy of her credit reports, and for failing to fulfill its reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p), which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) because Defendant resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

8. Plaintiff is a natural person who resides in Philadelphia, Pennsylvania, and is a "consumer" as that term is defined in 15 U.S.C. §1681a(c).

9. Trans Union is a limited liability company with its principal place of business located at 2 Baldwin Place, Chester, PA 19022, and is registered to do business in Pennsylvania, including this District.

10. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information about consumers to furnish consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

## FACTS

11. Plaintiff applied for a mortgage in June 2020.

12.  As part of Plaintiff's mortgage application, she authorized her mortgage broker to access her credit reports.

13.  Plaintiff's mortgage broker requested Plaintiff's tri-merge credit file using Plaintiff's Social Security number and date of birth.

14.  In response to her mortgage broker's request, Trans Union reported the following information:

```
TRANSUNION/FICO CLASSIC (04) - ALEXIS L LICCIARDELLO - ▮
SCORE: N/A
SC2 - FILE NOT SCORED BECAUSE SUBJECT IS DECEASED
```

15.  Trans Union's reporting was grossly inaccurate: Plaintiff is not deceased and has a credit score.

16.  Trans Union also reported the following alert on Plaintiff's credit file:

```
                                                      TU IDVISION ALERT
*** IDVISION ALERT ***
2 - LICCIARDELLO, ALEXIS LYNN
* 6000 - FILE SSN USED IN DEATH BENEFITS CLAIM FOR DOROTHA EVANS.DOB:06/27/1922.DOC:12/23/1950
```

17.  The alert and associated information is also inaccurate. Plaintiff's Social Security number has never been used in a death benefits claim.

18.  This death benefits claim was for an individual with a Social Security number that does not match Plaintiff's Social Security number.

19.  The information that Trans Union reported to Plaintiff's mortgage broker also included an incorrect name and date of birth.

20.  Upon information and belief, all of the inaccurate information that Trans Union reported about Plaintiff to her mortgage broker occurred because Trans Union mixed her credit file with another consumer's credit file.

21.  Trans Union reported this erroneous information within Plaintiff's file because *one* furnisher provided Trans Union with an incorrect Social Security number. Trans Union knows the

Social Security Administration issues *one* Social Security number to consumers, yet Trans Union did not review the other Social Security number it maintained for Plaintiff.

22. In addition, Trans Union failed to review other information it maintained about Plaintiff such as other creditors reporting she was alive and making payments on her credit accounts before reporting the deceased notation and alert pertaining to Dorotha Evans, born seventy (70) years before Plaintiff.

23. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintains concerning Plaintiff.

24. Due to Trans Union's inaccurate reporting, Plaintiff's mortgage application was denied.

### *Plaintiff's First Dispute with Trans Union in July 2020*

25. In or about July 2020, extremely stressed, anxious, and embarrassed by Trans Union's inaccurate reporting, Plaintiff disputed the inaccuracies with Trans Union.

26. Shortly thereafter, Plaintiff mailed Trans Union documents in support of her dispute, as requested by Trans Union.

### *Trans Union's Response to Plaintiff's July 2020 Dispute*

27. Trans Union failed to respond to Plaintiff's July 2020 dispute.

28. Trans Union failed to conduct a reasonable reinvestigation, or any reinvestigation whatsoever, of Plaintiff's July 2020 dispute.

29. Trans Union failed to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete the inaccurate deceased notation from Plaintiff's credit file before the end of the 30-day

period beginning on the date on which Trans Union received notice of the dispute from Plaintiff as required by 15 U.S.C. § 1681i(a)(1)(A).

30.     Thereafter, Trans Union failed to correct or delete the inaccurate deceased notation appearing on Plaintiff's Trans Union credit report and continued reporting Plaintiff as deceased and without a credit score until five months after her dispute.

31.     As a result of Defendant's conduct, action, and inaction, Plaintiff suffered actual damages including being denied access to necessary credit; loss of the ability to purchase and benefit from her good name and credit rating; being chilled from applying for additional credit opportunities; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including, but not limited to, stress; anxiety; loss of sleep; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and being reported as deceased and without a credit score.

### *Trans Union's Willful Violations of the FCRA*

32.     Trans Union has had substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

33.     As early as 1992, the Attorneys General of eighteen states were forced to sue Trans Union because of its conduct in mixing consumer credit files. The lawsuit resulted in an Agreement of Assurances between the attorneys general relating to Trans Union's responsibilities to prevent mixed files.

34.     Trans Union knows that its computer system causes one individual's credit report to be confused with another individual's credit report causing a "mixed file."

35.     Trans Union has been sued repeatedly for failing to prevent mixed consumer files, including *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union*

*Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *see also Thomas v. Trans Union*, No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, No. 3:11-cv-1317 (D. Conn. Aug. 17, 2011); *Clark v. Trans Union, LLC*, No. 1:21-cv-2430 (D. Md. 2021); *Bridgett v. Trans Union, LLC*, No. 1:16-cv-1112 (E.D. Va. 2016); *Lopez v. Trans Union, LLC*, No. 1:12-cv-902 (E.D. Va. 2012); *Chaudhary v. Trans Union, LLC*, No. 3:14-cv-123 (E.D. Va. 2014); *Kang v. Equifax Info. Servs.*, LLC, No. 1:15-cv-01406 (E.D. Va. 2015); *Moulvi v. Equifax Info. Servs. LLC*, No. 1:15-cv-01073 (E.D. Va. 2015); *Barclay v. Trans Union, LLC*, No. 1:14-cv-01200 (E.D. Va. 2014).

36. Trans Union knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

37. Trans Union also does not conduct any independent verification with any source that a consumer is actually deceased before adding the deceased notation to a consumer's credit file.

38. For example, Trans Union regularly receives the "Death Master File" from the Social Security Administration listing all of the consumers that the United States government believes to be deceased, organized by Social Security number. However, Trans Union does not cross-reference its reporting to determine if the deceased notation that it is reporting is in fact accurate.

39. In addition, Trans Union also ignores other conflicting information in a consumer's file—such as the opening of new accounts, payments made on currently open accounts, or the

failure of other data furnishers to report the consumer as deceased—before marking a consumer as deceased.

40. This conduct causes consumers to suffer significant damages because when a consumer is marked as deceased, it is reported to any potential creditor and triggers a "zero" credit score, most often rendering a consumer unable to obtain any new credit.

41. Trans Union and its competitors have repeatedly been sued for inaccurately reporting living consumers as deceased. *See e.g.*, *Sheldon v. Experian Info. Sols., Inc.*, No. CIV.A. 08-5193, 2010 WL 3768362 (E.D. Pa. Sept. 28, 2010); *Aslani v. Corelogic Credco, LLC*, No. 1:13-cv-2635-CC-LTW, 2014 WL 12861199, at *1 (N.D. Ga. Aug. 18, 2014), *report and recommendation adopted,* No. 1:13-cv-2635-CC-LTW, 2014 WL 12861361 (N.D. Ga. Sept. 8, 2014); *Sheffer v. Experian Info. Sols., Inc.*, No. CIV.A. 02-7407, 2003 WL 21710573, at *2 (E.D. Pa. July 24, 2003); *Oxfurth v. Experian Info. Sols., Inc.*, 1:14-cv-123 (E.D. Va.); *Boris v. Experian Info. Sols., Inc.*, 7:16-cv-206 (W.D. Va.); *Pang v. Credit Plus, Inc.*, 1:20-cv-122 (D. Md.).

42. Despite these lawsuits, Trans Union has not revamped its procedures to ensure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA, 15 U.S.C. § 1681e(b).

43. As a standard practice, Trans Union does not conduct independent investigations in response to consumer disputes.

44. Upon information and belief, consistent with its standard policies and procedures, Trans Union automatically generated its "investigation" results because one furnisher provided an inaccurate Social Security number for Plaintiff, which was two digits different from Plaintiff's actual Social Security number. The investigation results verified the deceased notation and

information it reported pertaining to Dorotha Evans. Trans Union failed to take any additional steps to verify the accuracy of the information or correct the mixed file issue.

45. Instead, Trans Union continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

46. Trans Union does not intend to modify its dispute processing or reinvestigation procedures because doing so would drastically increase its operating expenses. Instead, Trans Union intentionally chooses not to comply with the FCRA to lower its costs.

47. Accordingly, Trans Union's violations of the FCRA are willful and it is liable for punitive damages under 15 U.S.C. § 1681n.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)

48. Plaintiff restates each of the preceding allegations.

49. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

50. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained about Plaintiff.

51. For example, despite actual and implied knowledge that Plaintiff is alive and well, Trans Union published information indicating that Plaintiff is deceased.

52. As a result of this inaccurate reporting, Plaintiff's credit score was reported as "zero" and Plaintiff was unable to obtain the credit that she applied for.

53. In addition to these credit denials, Plaintiff suffered additional actual damages, including damage to her credit rating, lost opportunities to enter into consumer credit transactions, and emotional distress, including aggravation, inconvenience, embarrassment, and frustration.

54. Trans Union's conduct, actions, and inaction were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n.  In the alternative, Trans Union's conduct, actions, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

55. Plaintiff is also entitled to recover actual damages, statutory damages, costs, and her attorney's fees from Trans Union under 15 U.S.C. § 1681n or 15 U.S.C. § 1681o.'

## COUNT II
## 15 U.S.C. § 1681i

56. Plaintiff restates each of the preceding allegations.

57. Trans Union violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of § 1681i(a)(4); and (3) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit files or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

58. Because of Trans Union's violations of § 1681i, Plaintiff suffered actual damages, including credit denial, damage to reputation, embarrassment, humiliation, and other emotional distress.

59. Trans Union's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

9

WHEREFORE, Plaintiff demands judgment for compensatory, statutory, and punitive damages against Trans Union; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the legal rate, and such other relief the Court considers proper.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,

**ALEXIS LICCIARDELLO**

Dated: March 20, 2023

*/s/ Jacob M. Polakoff*
Jacob M. Polakoff, PA Bar No. 204124
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-5816
Fax: (215) 875-4604
Email: jpolakoff@bm.net

Hans W. Lodge, *pro hac vice forthcoming*
BERGER MONTAGUE PC
1229 Tyler Street NE, Suite 205
Minneapolis, MN 55413
Tel: (612) 594-7794
Fax: (612) 584-4470
Email: hlodge@bm.net

Kristi Cahoon Kelly, *pro hac vice forthcoming*
Casey S. Nash, *pro hac vice forthcoming*
KELLY GUZZO, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com

*Counsel for Plaintiff*